UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Subpoena Served on Clear Street LLC<br><br>HAL D. MINTZ, and<br>SABBY MANAGEMENT LLC,<br><br>                Petitioner,<br><br>    v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                Respondent. | Civil Action No. 1:24-mc-00217<br><br>(Arising from Case No. 1:23-CV-3201-RMB-AMD in the United States District Court for the District of New Jersey)<br><br>**DECLARATION OF HAL D. MINTZ IN SUPPORT OF MOTION TO QUASH NON-PARTY SUBPOENA** |

Pursuant to 28 U.S.C. § 1746, Hal D. Mintz hereby declares under penalty of perjury as follows:

1. I am the principal and managing partner of Sabby Management LLC ("Sabby"). Sabby and I are the Petitioners in this miscellaneous action seeking to quash the subpoena, dated March 25, 2024 (the "Subpoena"), issued to non-party Clear Street LLC ("Clear Street") by Respondent U.S. Securities and Exchange Commission (the "SEC"). I have personal knowledge of the facts and circumstances set forth herein.

2. The Subpoena issued out of the matter of *U.S. Securities and Exchange Commission v. Hal D. Mintz and Sabby Management LLC*, No. 23-cv-3201 (RMB) (AMD), an action currently pending in the District of New Jersey before the Hon. Renée Marie Bumb (the "SEC Litigation"). Sabby and I are the defendants in the SEC Litigation; the SEC is the plaintiff.

3. I submit this declaration in support of my and Sabby's motion to quash the Subpoena, and to establish that the Subpoena seeks documents and information of a highly

proprietary, confidential, and private nature in which Sabby has a real, personal, and protectible right or interest.

4. A copy of the Subpoena is attached to the declaration of counsel filed contemporaneously with this action and its accompanying motion to quash. (*See* Declaration of Michael Van Riper).

**Sabby and its Business**

5. Sabby is the manager of two private equity investment funds – "hedge funds," in common parlance. Sabby manages two such funds: the Sabby Healthcare Master Fund, LTD and the Sabby Volatility Warrant Master Fund, LTD.

6. I run the investment operations of Sabby and manage each of the fund's investment portfolios. In that role, I assess investment risks, direct trading, coordinate research and analysis, and function as one of Sabby's public faces to current and potential investors. I also develop Sabby's trading, risk, and arbitrage strategies.

7. Clear Street has been one of Sabby's brokers. As a broker, Clear Street has access to voluminous information related to Sabby's trading, including trading records identifying the issuers of shares or securities traded by Sabby, the numbers of shares or securities traded, order pricing, settlement dates, and order timing down to the minute and likely second, as well as communications between Sabby and Clear Street relating to such trades.

**The SEC Litigation and the Subpoena**

8. The SEC Litigation is an enforcement action, in which the SEC alleges that – under my direction – Sabby's trading activity in ten publicly traded companies from March 2017 through May 2019 violated federal securities laws.

9.     The Subpoena, however, directs Clear Street to produce "all" records of Sabby's trading in four entirely *different* companies during various time periods throughout 2023, starting almost *four years* after the trades that form the basis of the SEC Litigation.

10.    The companies and time periods specified in the Subpoena are: (i) Enscience BioSciences, Inc., from both May 10, 2023 through May 19, 2023 and October 6, 2023 through October 16, 2023; (ii) Baudax Bio, Inc., from April 20, 2023 through April 27, 2023; (iii) BioTherapeutics Holdings, Inc., from June 28, 2023 through August 4, 2023; and (iv) eFFECTOR Therapeutics, Inc., from May 26, 2023 through June 9, 2023.

11.    None of the four companies specified in the Subpoena, however, are named or referenced in the complaint in the SEC litigation, nor does the SEC allege in that case that Sabby's trading in those companies, at *any* time, violated any securities laws.  On the contrary, the SEC has made no allegation with respect to those four companies whatsoever.

12.    Similarly, the complaint in the SEC Litigation does not allege any improper trading in *any* company's stock during the time periods set forth in the Subpoena.  Rather, the complaint alleges that defendants engaged in an improper trading scheme during the period of March 2017 through May 2019: nearly four years before the trading for which the SEC now seeks records in the Subpoena.

13.    The Subpoena nevertheless demands production of "All Documents and Communications Concerning trading by Sabby" in each of those four companies during those periods, with no further exceptions or tailoring.

**Sabby's Proprietary Trading Strategies**

14.    As a hedge fund manager, Sabby is in the business of using sophisticated investment strategies on behalf of investors who pool their capital into Sabby's hedge funds.

Sabby's investors are typically a mix of high net-worth individuals and institutional investors: formally, they are all classified as "accredited investors" under securities regulations. Sabby ultimately makes money for itself and its investors – which include myself and several family members – by generating above-market returns on the investment portfolios of its underlying funds and through management fees and other compensation structures.

15. To attract sophisticated qualified investors and sufficient capital in the first place, however, Sabby must do more than merely beat the market: it must beat *other investment funds*, and it must do so consistently. Fund performance is therefore absolutely key to Sabby's success, and Sabby's investment strategies are absolutely key to fund performance – just as they are for any other hedge fund manager.

16. Sabby has employed multiple strategies over the years, including trading in securities, derivatives, and stock purchase warrants acquired through public offerings, private placements, and secondary offerings. Many of these strategies have taken advantage of short-term price volatility, requiring both precise human observation and algorithm-driven automation to correctly time trades and issue orders based on fluctuations in the market price of potentially hundreds of different securities. Getting these strategies right demands much time, effort, analysis, and research by Sabby.

17. Sound strategy and strong performance alone, however, will not allow Sabby to successfully compete with other fund managers. Sabby must also maintain secrecy over the details of those strategies that prove most effective. Otherwise, Sabby's competitors can and will steal its strategies, curtailing whatever advantage they provided to Sabby in the marketplace.

18. To ensure secrecy over the details of its strategies, Sabby must in turn take care to conceal its investment positions over time, which means Sabby must safeguard its trading records.

Knowledge of Sabby's investment positions can allow competitors and even sufficiently dogged members of the public to "reverse engineer" the all-important details of these strategies, diminishing the qualitative edge that allows Sabby to attract and retain investors and capital.

**Sabby Protects the Confidentiality of its Strategies and Trading Records in its Agreements with Employees and Brokers, Including Clear Street**

19. Consequently, Sabby takes steps to protect the confidentiality of its trading positions and trading records.

20. As a condition of their employment, all of Sabby's employees must agree to a set of terms and conditions set forth in an offer letter. Those offer letters incorporate Sabby's standard Confidentiality, Inventions and Non-Solicitation/Non-Competition Agreement (the "Employee Non-Disclosure Agreement"), which is typically attached to the offer letter as Appendix A. A true and correct copy of the Employee Non-Disclosure Agreement is attached hereto as Exhibit 1.

21. That agreement contains broad prohibitions on the employee's unauthorized disclosure of confidential information, which is defined to include, without limitation: "information concerning [Sabby and its affiliates'] operations, systems, personnel, *trading or investment strategies*, investment models or other models, developments, inventions, *performance*, research, *actual or proposed investments*, [and] assets under management . . . ." (Ex. 1 ¶ 1) (emphasis added).

22. Likewise, as a condition of Clear Street's provision of brokerage services to Sabby, Clear Street and Sabby entered a separate Non-Disclosure Agreement, dated December 16, 2022, and remaining in force for two years. A true and correct copy of that Non-Disclosure Agreement is attached hereto as Exhibit 2.

23. The Non-Disclosure Agreement forbids both Sabby and Clear Street from unauthorized disclosure of each other's confidential information, which the agreement defines to

include, without limitation: "financial information, *trading data*, market data, *strategy information, trading positions, trading parameters*, technical data, trade secrets, know-how, actual and anticipated research . . . concepts, [and] ideas . . . ."  (Ex. B ¶ 1) (emphasis added).  That provision continues in force for an additional five years beyond termination of the agreement.  (*Id.* ¶ 9).

24.     Sabby's standard terms and conditions of employment and Sabby's Non-Disclosure Agreement with Clear Street, then, unambiguously forbid the unauthorized disclosure of Sabby's trading strategies, trading data, and investment positions.

25.     Trading records responsive to the Subpoena would show information including the names of share issuers, numbers of shares, order pricing, and order and settlement timing down to the minute and second, as well as communications between Sabby and Clear Street relating to such trades – all confidential information protected by Sabby's agreements with its employees and Clear Street.

**Sabby Has a Real, Personal, and Protectible Interest in the Documents and Information Sought by the Subpoena**

26.     The wide-ranging confidential trading records sought by the Subpoena capture Sabby's underlying trading and investment strategies, which is the life blood of Sabby's business and that of any other fund manager.  Sabby, moreover, takes pains to protect this vital information from disclosure to the public and its competitors through confidentiality agreements with its employees and brokers – including Clear Street, the recipient of the Subpoena itself.

27.     For all of the foregoing reasons, the Subpoena therefore seeks documents and information of a highly proprietary, confidential, and private nature in which Sabby has a real, personal, and protectible right or interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2024

                                                                                                        _____
                                                                                                        Hal D. Mintz